Huibregtse, Huibregtse, Mr. O'Neill. Good morning, Your Honors, and may it please the Court, Matthew O'Neill representing Al Kennedy, the appellant. Mr. Kennedy is entitled to his day in court. When he filed his action, he started off by filing the IFP Informa Pauperis application, and at the very end of that application he hand-typed in a request to have the entire filing fee taken out of his release account. Under Wisconsin law at the time and Wisconsin law now, he was entitled to use those release funds to pay the filing fee to proceed with his litigation. The trial court, in dismissing this action for improper, false statements on that IFP application, made a finding that Mr. Kennedy was attempting to avoid paying the filing fee. That finding was clear error. Mr. Kennedy asked it in the IFP application and followed up with a specific letter to the clerk of courts in closing his prison account statements, and in that letter, handwritten, said, directed the court that I have in my IFP application to ask that the entire filing fee be paid from my release account. So, unlike... What about his statements, I am unable to pay the fees and costs of this proceeding or to give security, it's my poverty, and when asked, you know, list all the funds he had, he said approximately $10. That was incorrect, Your Honor. The statement that he was in poverty and he believed he did not have sufficient assets to pursue his litigation was true. That was not false. His estimate of $10... That was what? Was not false. Was not false? He couldn't pay the fees and costs? No, that statement on the form was, in fact, this wasn't a handwritten statement by him, this is part of the form, but that was not true. He did have the money to pay it, which is why he asked on page 4 to pay the full fees. And he didn't have just $10 in his, right? Correct. Well, he had $739 in his release account, $13 in his regular account, and $1,433. You know, 28 U.S.C. 1915 is quite severe about that, about, you know, misrepresenting your... The court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue. Correct. And what that standard means is when you take into account the assets that are not disclosed on the form and you add them to the assets that are disclosed, looking at that correct picture, is that individual in poverty or are they not in poverty? That's what the Eighth Circuit held in the Lee v. McDonald case, and that's the correct application given the harshness of that sanction. And when you take Mr. Kennedy's $739 and add $1,433 to it, I contend, and we have argued, he remained in poverty to pursue a complicated medical malpractice and deliberate indifference case that was going to require, at a minimum, several depositions, expert testimony, a lot of cost, and a lot of pursuit. And the IFP, getting that status is not just being excused from the fee. And mind you, prisoners aren't excused anymore, they just pay over time. But being granted IFP status allows a person to request the appointment of counsel to represent them. It allows them to be excused from paying certain costs. It excuses them from having to post a bond when one is necessary. So it provides what the U.S. Supreme Court said in Rowland, a series of benefits. Given that series of benefits, when one stacks up Mr. Kennedy's fixed sum. I don't know, what is the justification for his having said he had only $10? His own justification is at the time he did not know how much was in the child support account, and that was his estimate. Well, he can say he doesn't know, but he said $10. He said in his deposition that at the time he didn't know how much was in there, and that was his fair estimate. That was his what? His estimate of what was in the account at that time. Why didn't he ask someone? He could have, Your Honor. What he could have done is asked to communicate with his prior attorney, Mr. Levy, who was holding the account. His prior attorney just asked someone at the prison, you know? The money was not in the prison account. Well, wherever it was. Right. He could have done that. I agree. That's conceded. It was a possibility, and he didn't. And the question is for the failure to do that in this context where it adds up to $2,172, does that require dismissal? Does the district judge examine some other possible sanctions and explain why he thought they would be inadequate? Correct. What do you think would have been an appropriate sanction in this case, and why? One of two sanctions. I think a monetary fine would have been an appropriate sanction. At the time, Mr. Kennedy may not have had the money to pay it, but that sanction would travel with him. The next time money came into his account, he would have to pay it out. A fine for an IFP? Okay. The judge explained why he thought that would be inadequate. Or dismissal without prejudice. And what would that achieve? What that would achieve at the time of the dismissal is the medical malpractice case would disappear forever and he'd be left with a deliberate indifference case. It's not no sanction. Your position, which I would think set a very bad precedent. I think it set an appropriate precedent. They'll all say $10. I don't know. I don't know what's in my account. $10? 50 cents? Right? But if they were all saying $10 or making misstatements, and the net sum of the misstatement was to use their release account funds to pay the filing fee versus another account to pay the filing fee, the harm to the system is not the same as in the Thomas case where the individual is trying to avoid the fee entirely and lying to the court about receiving $60,000 from a retirement account. What the district court concluded at the end is what Mr. Kennedy was trying to do was not to have to use those external funds that he was using to buy Christmas presents for his kids and his mother right thereafter, but rather use his release account funds, which is his money, to pay the fee. He wasn't trying to get out of the fee. He was trying to pay the fee from one account rather than the other. And I submit when dismissal with prejudice is the most severe sanction available. So why did he say approximately $10? His testimony is that's what he believed that balance was at that time. And I can't add to his testimony. I can tell you what he said. It was wrong. The district court found it was a lie. And even on that record, given the entirety of the case and what that lie ended up being aimed at, which is not defrauding the system, he wanted to pay the whole fee. He wrote a separate letter to the clerk asking for it. He filed a motion to get the money taken out of his account. When it was simply a matter of trying to use some extra funds to buy presents for his kids and wanted to use his own funds to pay for his lawsuit, and when you add all that assets together, when he still was in poverty, dismissal with prejudice was an inappropriate sanction. In the normal civil world where I practice ordinarily, dismissal with prejudice almost never happens. It is not an ordinary sanction by any means. It is the greatest sanction. And here, for this level where it had no impact on the litigation, where he was asking, unlike so many of these other prisoner litigants, he was asking to pay the full fee, dismissal with prejudice was a step too far. There was something less that could be done. And the district court, Judge Hamilton, by the way, did also examine the strength of Mr. Kennedy's case, and there I think he clearly erred in saying it was not a strong case because in developing the case through depositions, we had a physician from the University of Wisconsin Medical School testify, and this was not a hired expert, this was his treating endocrinologist through a clinic, that Dr. Adler was negligent when he didn't examine the ultrasound when it came back in June and instead put it in a drawer until September. Dr. Davis said that caused harm. The tumors grew by 50% during the time when he got the ultrasound results and the time he pulled them out of his drawer to look at them. Let me ask you about something that troubles me, Mr. O'Neill. The district judge invited a kind of informal evaluation of the case from a plaintiff's malpractice firm, I guess. He did. And is it correct that that firm had been directly adverse to Mr. Kennedy, had represented the estate of the victim who was killed in the accident? Yes, at the time that analysis was done, his firm was representing the estate of the victim of his crime in suing Mr. Kennedy. That troubles me. I'm certain it was unknown to Judge Griesbach. I'm not certain whether it was known to Mr. Attorney Tease. He was in a different office of Havish. He's up in the Green Bay area and the case was going on in Milwaukee, so I'm giving the benefit of the doubt there. But in my mind, that tainted that assessment. And beyond that, that assessment to me has very little weight. It was done early in the case based upon the pleadings and just a limited selection of medical records. And the ultimate conclusion was it's too expensive on the expert side for a private firm to carry the case because the damages wouldn't be great enough. That was all the opinion was. It wasn't that he had no case. And our later discovery, I think, firmly set us up for trial and for a winning trial. Thank you. Okay. Thank you very much, Mr. O'Neill. Ms. Potts? Good morning. May it please the Court, my name is Abigail Potts and I represent the defendants' appellees in this case. Essentially, this is a case that involves a district court's discretion to sanction a litigant for lying to the court. And there's really two points that I want to make this morning. The first one is that when a district court finds that an allegation of poverty is untrue, that finding goes to the ability to pay the filing fee and is reviewed by this court for clear error. The second point I want to make is just to reiterate that the district court did not abuse its discretion by dismissing with prejudice in this case where the court found that Mr. Kennedy intentionally misrepresented his financial circumstances in a way that was meant to manipulate the system. The district court here found that Kennedy lied about his financial circumstances on his IFP petition and this is the finding that mandated dismissal under the U.S. Code and which this court reviews for clear error. The allegation of poverty that we talk about a lot and that we're referring to a lot from our position is the allegation of poverty in the IFP petition which was cited by this court just a few minutes ago and which says, I declare under penalty of perjury that the following facts are true. I am unable to prepay the fees and costs of this proceeding or give security because of my poverty. The district court found that this was simply untrue and mandated dismissal and that is what is reviewed for clear error is our position. Kennedy claims that this lie doesn't matter. He said the lie doesn't matter because regardless of the fact that he lied about his financial circumstances on his IFP petition, he still was poor enough to kind of generally be impoverished in the general sense of the word. But what this argument is really asking this court to do is to change the standard of review in these cases and to add a whole other level of analysis that this court has not undertaken in the past. He really asked this court to expand the review so that even after a district court finds that an allegation of poverty is untrue and based upon a lie, that the court should then go into an additional analysis on, well, what constitutes poverty? Is he still impoverished in the sense of the word? And that not only conflicts with the language of the IFP petition in the U.S. Code, but it also conflicts with the case law of this circuit. Does the district judge have discretion under the statute to decide whether dismissal should be with or without prejudice? That is a discretionary decision that has been held to be discretionary by case law. Right. Okay. It seems pretty clear the district judge took into account this evaluation of the Habush firm of the case in exercising that discretion. I would say that the district court noted it. I wouldn't say it was a big consideration, but I think it is noted in the decision. Well, it's the kind of thing that would, if I were a district judge, might affect the decision between with or without prejudice. And let me just ask you. I mean, I'm troubled by the idea that the firm the judge asked for this advice was directly adverse to Mr. Kennedy. I assume Mr. Judge Griesbach didn't know about that. Right. That's my understanding as well. And I don't know about the firm, but that's a very troubling situation. It's our position that the letter was really drawn up in the process of trying to find assistance for Mr. Kennedy with his case. But the district court did note it in its decision. It's our position that it's not really the basis of the decision to dismiss with prejudice. If it were, would you be troubled? I don't think it would be inappropriate to consider it. If it were the sole basis for dismissal with prejudice, it would be a different case, but I would be troubled by that. But here I don't think it is at all. The court goes into pretty thorough detail on why the court was so disturbed by Mr. Kennedy's behavior. And the court specifically found that not only did he lie on his petition, but then he actually actively tried to hide this trust account. And he belittled defense counsel in the process while she was trying to uncover this account, and that Mr. Kennedy was really trying to manipulate the system to access a restricted account. The paragraph, I'm looking at the bottom of page 10 and top of 11 of the district judge's opinion. And the end of the paragraph in which he recounts this assessment from the Habeas Shrine. He apparently has no evidence that it resulted in any significant harm to him, given these factors, along with the fact that dismissal is mandated under 1915E. Dismissal with prejudice is the only appropriate sanction for plaintiff's actions in this case. That doesn't sound to me like it's just a notation. I read that, I guess, a little differently than you. I said the factors there is kind of a concluding statement where he's talking about all the things that he just talked about for pages. Did his lawyers suggest an alternative sanction? No. I think the state asked for dismissal with prejudice based on kind of the extent of manipulation that kind of went on throughout the process. This case went on for a long time before it was discovered that he had lied about his finances. So that was the request. I'm saying when the issue of dismissal with prejudice as a sanction arose, did Kennedy's lawyer, or Kennedy for that matter, suggest an alternative sanction? No. The second big point I want to make here is that the allegation of poverty does not relate to some general sense of whether an individual is rich enough to pursue a complex litigation, as Kennedy's attorney suggests. It specifically relates to their ability to prepay their filing fees. And that is consistent with the language of the actual allegation of poverty in the IFP petition and this court's case law. This court has consistently used a two-step approach in this case, not a three-step approach. Kennedy's advocating three steps. There's really just two. One, did the district court commit clear error by finding that Kennedy lied about his ability to pay his filing fee? And the second question goes then directly to dismissal with or without prejudice, because dismissal at that point is mandated. So the second question then is, did the district court abuse its discretion in dismissing with prejudice? And this is, as I said, this is consistent with the code. It's consistent with the IFP language, where there's actually a specific allegation of poverty that we're talking about. And it's consistent with the case law of this court and this circuit. The second thing I want to talk about here this morning is the fact that the district court did have a good basis to dismiss with prejudice, and that that decision was reasonable. I understand the court's concerns with the question on whether or not it was appropriate to consider this letter from a private law firm. But the judge's decision in this case, I would submit, is very thorough and considers a lot of different facts in this case. The judge made a lot of specific factual findings about the extent of the deception and the misrepresentations that Kennedy made, kind of trying to double down, as the courts say, or hide certain facts from the defendant's attorneys throughout discovery in order to keep the trust fund hidden. And the sense is that the district court was really disturbed by Mr. Kennedy's behavior in this case and his misrepresentations, and he found them intentional. And precedent from this court and other courts have held that it is appropriate to dismiss with prejudice where a litigant lies to the court. And I think this is a pretty classic case of that. I think the court accurately looked at alternatives and found that since he filed this complaint, Kennedy has now used all his money in his accounts or distributed them. So now if he were to refile this case, he would probably get IFP status and all the benefits that go with it. So the court did not find that dismissal without prejudice would be any sort of sanction at all. What happened to the money in his account? I don't know. It looks as though most of it you can tell from the appendix. Kennedy's brief has a nice appendix. It shows that a lot of it went to payments. I can tell you specifically. Some payments to his mother, payments, as Mr. Kennedy's attorney mentioned, to legal fees and to birthday presents and canteen items. Legal fees related to this case? Well, there's $100 for assistance with civil rights matter, presumably in our position a jailhouse lawyer type of fee. And then there's a lot of things that he just bought directly through suppliers from his trust account after he filed his IFP petition and after he filed this complaint. Counsel, for this evaluation that the judge invited from the outside law firm, where do you think that fits into the federal rules of civil procedure? It's my understanding that the court was really trying to get assistance from Mr. Kennedy. I understand that. It obviously didn't ultimately help him in the end. Correct, correct. And I'm trying to understand, and believe me, from the district judge's perspective, I understand why he might reach out for this kind of input, particularly given pressure our court is putting on district judges, particularly with respect to prisoner health care, which is chronically lousy, at least in this circuit. But, for example, I was looking, for example, at the special master rule, which does have provisions for disqualification and objectivity and so on. So where would you fit it in? I don't have a good answer for you on that one this morning, and I apologize. But I don't think that it was the basis of the decision to dismiss with prejudice. I think it was a note in passing on it to kind of fill out his analysis on that decision. Thank you very much. Okay. Thank you, Ms. Potts. Mr. O'Neill, anything further? I know I burned for all my time originally, so I'll be quick. First, I do believe in the briefing before the district court, while I was appointed counsel for Mr. Kennedy, we did suggest lower sanctions other than dismissal with prejudice, like dismissal without prejudice or like a fine. That is not a sanction, dismissal without prejudice. He just refiles unless the statute of limitations is run. Which it had on one of his claims. Was that a problem? It was. It had run on one of his two claims. The easier to prove. Well, had run when? Theoretically, the easier to prove because it's malpractice on a negligence standard. If the judge had dismissed without prejudice, would the statute of limitations have run by then? It would have run on the malpractice claim. It's a three-year statute of limitations in Wisconsin. And at that point, we were three years out from the time at which Mr. Kennedy was aware of the malpractice, which happened in 2011. But there was another charge? The other charge was deliberate indifference under Section 1983, which borrows a six-year statute from the state of Wisconsin. So you're suggesting that dismissal without prejudice would have been a sanction of sorts because it would have eliminated his malpractice claim? I am. Yes. Did you argue that in your brief? If I recall, Your Honor, and I was not looking over my briefs in the district court preparing, if I recall, I do believe I suggested alternative sanctions would be appropriate less than dismissal with prejudice. Like what? As I said, as I stand here, I don't recall if I gave a specific recommendation. But the identified in the case law, the questions are dismissal with prejudice, dismissal without prejudice, or other lesser sanctions such as a fine. Also, in quick rebuttal, I disagree with the stated standard by the state. Their position is that any misstatement on an IFP application mandates dismissal under 1915E2, and I think that is incorrect. I think the court has to follow up and find out whether with all assets considered the prisoner is or is not in poverty. If they remain in poverty, it's not a mandated dismissal. Then it becomes a discretionary call, and I believe the court abused its discretion for all the reasons I've stated. Thank you. So you were appointed, were you not? I was. So we thank you, Your Honor. It's on behalf of your attorney. Thank you.